1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

In re:

NEAL D. HARRINGTON, fdba ALLSTATE
INSURANCE, WEEKIRK
DEVELOPMENTS, and ABBIE S.L.
JOSEPH-HARRINGTON, fdba A LITTLE
BIT OF HEAVEN,

　　　　　Debtors.

BANKRUPTCY NO. 02-43878-PBS

USDC CASE NO. C06-5100BHS

ORDER AFFIRMING BANKRUPTCY
COURT AND DISMISSING APPEAL

        This matter comes before the Court on the appeal by the Banker's Trust Company of

California, N.A. as Trustee on Behalf of Vendee Mortgage Trust 2001-1, and The Secretary of

Veterans' Affairs, their assignees and/or successors in interest ("the Secretary"), of the Order on

Motion to Alter or Amend Order for Clarification and Interpretation of Chapter 11 Plan (Dkt. 1-

2).  The Court has considered Appellant's Opening Brief (Dkt. 10), Appellee's Brief (Dkt. 11),

Appellant's Reply Brief (Dkt. 14), and the remainder of the file herein.

**I.  FACTUAL BACKGROUND**

        Abbie S. L. Joseph-Harrington and Neil D. Harrington ("the Harringtons"), the debtors,

filed a Chapter 11 petition on April 17, 2002.  Among the Harringtons' assets were four single-

family residences located in Clark County, Washington, each of which carries a loan evidenced

by a promissory note and secured by a deed of trust held by or through the Secretary.

ORDER - 1

On January 22, 2003, an order was entered fixing March 7, 2003, as the last day to file proofs of claim against the debtors. Dkt. 12-2, App. 2 at 14; Dkt. 12-8, App. 17 at 2.  The Secretary, Appellant, filed proofs of claim in November of 2003. Dkt. 12-2, App. 2 at 14-15.  No objection to the proofs of claim was filed. *Id.* at 15.  An order approving the debtors' disclosure statement was entered on February 5, 2004, and the debtors' amended Chapter 11 Plan ("the Plan") was confirmed by order on January 7, 2005. *Id*; Dkt. 12-8, App. 19 at 13.  On February 4, 2005, in response to a motion by the Secretary, an order was entered clarifying that the loans would be modified and that new loans would not be issued. Dkt. 12-2, App. 2 at 15.

On March 25, 2005, the Secretary filed a Motion for Clarification and Interpretation of the Chapter 11 Plan. Dkt. 12-2, App. 1 at 2.  It appears that this motion sought reconsideration, but the motion was not filed as such and was filed more than one month after the bankruptcy court's last order.  The Secretary contended that the Harringtons were attempting to modify the loans beyond what was contemplated by the bankruptcy judge because the Harringtons' proposed modifications erroneously listed the amounts of the Harringtons' loans. *Id.* at 4.  The Secretary also contended that the Harringtons' proposed modifications erroneously determined the interest rate to be applied to the note between the petition date and the confirmation of the Plan. *Id.*  The Secretary contended that the interest rate should be the note rate, which is 8% for Class 2 and 8.25% for Classes 3, 5, and 6. Dkt. 12-2, App. 2 at 15.  The Harringtons contended that the interest rate should be 6.53% based upon the formula set forth in the confirmed Plan. *Id.* The motion was denied. Dkt. 12-5, App. 9 at 2 (hereinafter "Clarification Order").  Bankruptcy Judge Paul B. Snyder held that the language of the confirmed Plan determined the rate of interest to be applied and that the amendment to the confirmed Plan, which clarified that the notes would be modified and that new notes would not be issued, did not alter the formula set forth in the

confirmed Plan. Dkt. 12-2, App. 2 at 16.  Judge Snyder held that "[t]he interest rate to be applied to each claim between the petition filing and confirmation is 6.53%." *Id.* at 17.

The parties also contested the method for determining the balance on the Harringtons' loans.  The Harringtons contended that the balances were as set forth in the debtors' disclosure statement, while the Secretary contended that the balances were as set forth in its proofs of claim. *Id.*  The justifications offered by the Secretary were that the Secretary did not receive proper notice of the deadline for fling claims and that the Harringtons did not file an objection. Judge Snyder rejected these justifications. *Id.* at 18.  Judge Snyder held that the notice of bar date was not a contested proceeding and therefore did not require notice by certified mail, that the Secretary's proof of claim was not timely filed, and that the debtors were not required to object to the untimely proof of claim. *Id.* at 18.

The Secretary moved for reconsideration, alteration, or amendment of Judge Snyder's order. Dkt. 12-5, App. 10 at 5.  The motion was denied. Dkt. 12-5, App. 11 at 15 (hereinafter "Reconsideration Order").  The Secretary appeals the Reconsideration Order. Dkt. 1-3

## II.  PROCEDURAL BACKGROUND

The Appellant raises the following issues:

(1) Did the Bankruptcy Court commit reversible error by using the estimated loan balance figures presented in the Debtors' Disclosure Statement, with respect to Appellant's loans, in determining the loan balances for purposes of the Debtors' Chapter 11 Plan and its ultimate Confirmation?

(2) Did the Bankruptcy Court commit reversible error by failing to use Appellant's Proofs of Claim figures, with respect to Appellant's loans, in determining the loan balances for purposes of the Debtors' Chapter 11 Plan and its ultimate Confirmation?

(3)  Did the Bankruptcy Court commit reversible error by failing to use Appellant's loan balance figures as detailed in Appellant's Motions for Relief - all of which where resolved by way of Stipulated Orders - in determining the loan balances for purposes of the Debtors' Chapter 11 Plan and its ultimate Confirmation?

(4) Did the Bankruptcy Court commit reversible error by failing to determine whether Debtors' Chapter 11 Plan provides Appellant with its indubitable equivalent pursuant to 11 U.S.C. Section 1129(a)(2)?

(5) Did the Bankruptcy Court improperly allow retroactive application of a cramdown interest rate on Appellant's loans?

Dkt. 5-3 at 1-2.

### III. DISCUSSION

District courts have jurisdiction to hear bankruptcy appeals under 28 U.S.C. § 158(a):

(a) The district courts of the United States shall have jurisdiction to hear appeals

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a).

In reviewing a decision of the bankruptcy court, the district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, and the conclusions of law, de novo. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).  A bankruptcy court abuses its discretion if the court did not apply the correct law or rested its decision on a clearly erroneous finding of material fact. *See SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001). Appellant alleges five points of error, all of which center around the bankruptcy court's use of the loan balance figures offered by the Harringtons in their disclosure statement and of the

interest rate contained in the confirmed Plan.  As explained more fully below, these issues were

decided upon confirmation of the Plan and are subject to res judicata.

**A.     RES JUDICATA EFFECT OF CONFIRMED PLAN**

The Harringtons contend that issues raised by the Secretary are governed by the Plan,

which has a res judicata effect on creditors. Dkt. 11 at 14-15.  A confirmed Chapter 11 plan is

binding on creditors.

> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions
> of a confirmed plan bind the debtor, any entity issuing securities under the plan,
> any entity acquiring property under the plan, and any creditor, equity security
> holder, or general partner in the debtor, whether or not the claim or interest of
> such creditor, equity security holder, or general partner is impaired under the plan
> and whether or not such creditor, equity security holder, or general partner has
> accepted the plan.

11 U.S.C. § 1141(a).  Confirmation of a plan of reorganization constitutes a final judgment

subject to the ten-day appeal deadline. *Heritage Hotel Partnership I*, 160 B.R. 374, 377 (B.A.P.

9th Cir. 1993); *see* Fed. R. Bankr. P. 8002(a).

There are two types of res judicata: First, "claim preclusion" forecloses litigation of

matters that have never been litigated. *In re Associated Vintage Group*, *Inc.*, 283 B.R. 549, 554

(B.A.P. 9th Cir. 2002).  Second, "issue preclusion" forecloses relitigation of matters that have

been actually litigated. *Id.*  Four elements must be present to establish the defense of res judicata:

"(1) the parties were identical in the two actions; (2) the prior judgment was rendered by a court

of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of

action was involved in both cases." *In re Heritage Hotel Partnership I*, 160 B.R. 374, 376-77

(B.A.P. 9th Cir. 1993).

On appeal, the Secretary does not dispute whether the elements for applying res judicata

are satisfied and instead contends that res judicata should not apply because "the [bankruptcy]

Court reserved jurisdiction of the specific issue of the proper monthly payment and loan

balances." Dkt. 10 at 14. The Court notes that Judge Snyder did not reserve jurisdiction, if at all, over the question of the interest rate. *See* Dkt. 12-2, App. 2 at 16-17; Dkt. 12-5, App. 9 at 3.

### 1.      Post-Petition and Pre-Confirmation Interest Rate

Judge Snyder held that the question of the interest rate to be applied between the filing the petition and the date the Plan was confirmed was subject to res judicata:

> All questions that were or could have been raised pertaining to the plan are entitled to res judicata effect. . . . In this case, the confirmed plan specifically establishes the interest rate to be used to calculate the balance. The secured creditor did not object to this treatment and are [sic] thus bound by the terms of the confirmed plan. The interest rate to be applied to each claim between the petition filing and confirmation is 6.53 percent.

Dkt. 12-2, App. 2 at 16-17; Dkt. 12-5, App. 9 at 3 ("It is further ordered that the balance due for foregoing claims, as of the plan confirmation date, be determined by applying an interest rate of 6.53% . . . ."). The Secretary offers no basis for review of the post-petition and pre-confirmation interest rate, an issue that was resolved by confirmation of the Plan.  The Court should therefore hold that the Plan has a res judicata effect as to these issues.

### 2.      Loan Amounts

With respect to the amounts due on the Harringtons' loans, Judge Snyder retained the option of appointing an accountant to resolve the parties' competing calculations:

> The secured creditor is alleging that even if the debtor's interest rate is acceptable, the debtor's figures are inaccurate in that they failed to take into account missed payments, et cetera. The Court will not rule on this issue at this time. If the parties cannot resolve this issue among themselves given the Court's decision, the Court will appoint an independent accountant to review the calculations and file a report with the Court if the parties are unable to agree to the calculation.

Dkt. 12-2, App. 2 at 19; Dkt. 12-2, App. 9 at 3 (Clarification Order providing "that in the event the parties do not agree to the balance due on each of the above claims . . . *based on the interest rate established by this order*, the Court will appoint an examiner") (emphasis added); Dkt. 12-5, App. 11 at 16 (Reconsideration Order providing, "If the parties cannot agree on the formulas and

1    figures to determine monthly payments under the Notes and Deeds of Trust, the Court retains

2    jurisdiction to appoint a receiver/accountant to determine said amounts."). The parties

3    apparently did not avail themselves of this opportunity. To the extent that Judge Snyder retained

4    jurisdiction to settle discrepancies in the parties' figures, the issue is not properly before this

5    Court. In addition, the Plan squarely addressed and resolved such issues, and the Secretary does

6    not appeal confirmation of the Plan. The Secretary's arguments regarding provisions of the Plan,

7    including those regarding the application of post-petition and pre-confirmation payments and the

8    rate of interest applied post-petition and pre-confirmation, are therefore not subject to review.

9

10          **3.       Indubitable Equivalent and "Cramdown"**

11          In the fourth assignment of error, the Secretary contends that the bankruptcy court

12   committed reversible error by failing to determine that the Plan does not provide the Secretary

13   with its indubitable equivalent pursuant to 11 U.S.C. § 1129(a)(2). Dkt. 10 at 14. In the fifth

14   assignment of error, the Secretary contends that the bankruptcy judge improperly allowed

15   retroactive application of a cramdown interest rate. *Id.* at 18. Specifically, the Secretary

16   contends that it was not provided an appropriate rate of interest on its post-petition and pre-

17   confirmation claims, that the altered interest rate was applied from the date of filing, and that the

18   Secretary was therefore not afforded its indubitable equivalent. *Id.* at 15.

19          Bankruptcy courts have an affirmative duty to ensure that the Plan satisfies all

20   requirements for confirmation found in 11 U.S.C. § 1129. *In re Ambanc La Mesa Ltd.*

21   *Partnership*, 115 F.3d 650, 653 (9th Cir. 1997). Plan confirmation is proper if "the plan does not

22   discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests

23   that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). A plan is fair

24   and equitable to a class of secured claims if it provides the following:

25

26

27

28

ORDER - 7

(i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A). The bankruptcy court must confirm a Chapter 11 debtor's plan of reorganization if the debtor proves by a preponderance of the evidence either (1) that the plan satisfies all thirteen requirements of 11 U.S.C. § 1129(a), or (2) if the only unsatisfied condition is the eighth requirement, 11 U.S.C. § 1129(a)(8), the plan satisfies the cramdown alternative to this condition found in 11 U.S.C. § 1129(b), which requires that the plan not discriminate unfairly against and be fair and equitable towards each impaired class that has not accepted the plan. *In re Ambanc*, 115 F.3d at 653.

In this case, the bankruptcy court was on notice that the parties were not in agreement as to whether the Plan satisfied 11 U.S.C. § 1129(b)(2)(A) and confirmed the Plan over the Secretary's objection. Dkt. 10-2, Exh. 1 at 2. The Secretary did not appeal the bankruptcy court's confirmation of the Plan. *See* Dkt. 1-3 (Amended Notice of Appeal). Therefore, the issue of whether the Plan was properly confirmed in accordance with 11 U.S.C. § 1129 is beyond the Court's review.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    ESTIMATED LOAN BALANCE**

Even if res judicata did not apply, the bankruptcy court's refusal to adopt the Secretary's loan balance figures was not in error.

**1.    Untimely Proofs of Claim**

In the first, second, and fourth assignments of error, the Secretary contends that the bankruptcy judge committed reversible error by using the loan balance figures from the Harringtons' disclosure statement rather than those offered by the Secretary in its proof of claim. Dkt. 10 at 8.  The Secretary contends that the figures offered in its proof of claim should have been utilized because the debtors' figures were merely estimates, because the debtors failed to object to the Secretary's figures, and because the debtors' figures do not provide the Secretary with its indubitable equivalence. *Id.* at 8-9, 14. Whether an untimely proof of claim to which no objection was filed constitutes prima facie evidence of the validity or amount of the claim is a conclusion of law subject to de novo review. *In re Tucson Estates, Inc.*, 912 F.2d at 1166.

As a threshold matter, the Court notes that the note balances in the disclosure statement were "estimated" insofar as the balances were dependent upon the date of confirmation and other variables. *See* Dkt. 10-2, Exh. 1 at 3-4.

A creditor's proof of claim constitutes prima facie evidence of the claim: "A proof of claim executed and filed *in accordance with these rules* shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f) (emphasis added). In a Chapter 11 case, creditors are not require to submit proofs of claim. 11 U.S.C. § 1111(a) ("A proof of claim or interest is deemed filed . . . for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated."); Fed. R. Bankr. P. 3003(b)(1) ("It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided in

subdivision (c)(2) of this rule.").  The time for filing proofs of claim is set by the bankruptcy court and may be extended "for good cause shown." Fed. R. Bankr. P. 3003(c)(3).  If a claim is filed in accordance with the rules, the proof of claim supercedes the scheduling of the claim in the petition. Fed. R. Bankr. P. 3003(c)(4).

In this case, Judge Snyder established the bar date for proofs of claim as March 7, 2003. Dkt. 12-2, App. 2 at 14; Dkt. 12-8, App. 17 at 2.  The Secretary submitted its proof of claim in November of 2003, and the Harringtons did not object to the proof of claim.  Dkt. 12-2, App. 2 at 15.  Judge Snyder held that because the proof of claim was untimely, the Secretary was required to file a motion pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3), upon which the bankruptcy court would have determined whether, in its discretion, to allow the late filing. *Id.* at 19.  Judge Snyder held that because the Secretary did not seek such relief, its late proof of claim could not be considered, and the Harringtons were under no obligation to object to the untimely claim. *Id.*  The Secretary offers no legal authority for requiring debtors to object to late proofs of claim not supported by good cause as required by Federal Rule of Bankruptcy Procedure 3003(c)(3).

## 2.    Informal Proofs of Claim

In the third assignment of error, the Secretary contends that the bankruptcy court committed reversible error by deeming motions for relief from stay and accompanying declarations to be informal proofs of claim. Dkt. 10 at 12.  The Secretary contends that these motions and a stipulated protective order provide the principle balances found in the untimely proofs of claim and were filed before the bankruptcy court approved the Harringtons' disclosure statement in February of 2004. *Id.*  These documents were filed on January 5, 2004, February 5, 2004, and June 24, 2004, after the March 7, 2003, deadline for filing proofs of claim and after the Secretary filed its untimely, formal proof of claim in November of 2003. *See In re: Neil D.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Harrington,* 02-43878PBS Dkts. 90, 91, 93, 94, 96, 97, 107, 108, 126 (Bankr. W.D.Wash); Dkt. 12-2, App. 2 at 15 . Moreover, the protective order does not list the principle balances or the amounts due and did not attempt or effect any alteration of the Plan. *See In re: Neil D. Harrington,* 02-43878PBS Dkt. 126.

The Secretary cites authority from the Tenth Circuit in support of this contention. *See In re Reliance Equities, Inc.*, 966 F.2d 1338 (10th Cir. 1992). In *Reliance Equities*, the creditor attempted to justify its untimely proof of claim in a Chapter 7 case by arguing that the proof of claim was an amendment to a timely, informal proof of claim. *Id.* at 1345. The Tenth Circuit outlined the factors for allowing an informal proof of claim as follows:

> 1. the proof of claim must be in writing;
>
> 2. the writing must contain a demand by the creditor on the debtor's estate;
>
> 3. the writing must express an intent to hold the debtor liable for the debt;
>
> 4. the proof of claim must be filed with the Bankruptcy Court; and
>
> 5. based on the facts of the case, it would be equitable to allow the amendment.

*Id.* The creditor contended that it had an informal proof of claim by virtue of the trustee's knowledge of the creditor's claim before the bar date. *Id.* The Tenth Circuit rejected this contention because "a trustee's knowledge of a claim does not constitute an adequate informal claim, and bankruptcy courts will not ordinarily allow filing of a proof of claim after the claim bar date." *Id.* The case did not concern an untimely, informal proof of claim, as the Secretary alleges here.

In the Ninth Circuit, an informal proof of claim must "[1] state an explicit demand showing the nature and amount of the claim against the estate, and [2] evidence an intent to hold the debtor liable." *In re Anderson-Walker Indus. Inc.*, 798 F.2d 1285, 1287 (9th Cir. 1986). The

Secretary offers no authority for giving effect to an informal proof of claim that is untimely. *But see Sun Basin Lumber Co. v. U.S.*, 432 F.2d 48, 49 (9th Cir. 1970) (emphasis added) ("We agree that the document or documents *timely filed* must fairly reflect the existence of a claim against the estate.  It is not necessary, however, that the documents constitute a proof of claim."). In any event, res judicata applies because the issue of whether to accept the Secretary's proofs of claim, informal or formal, is an issue resolved upon Plan confirmation. Therefore, the Court holds that the bankruptcy court did not err in failing to consider documents filed after the bar date as informal proofs of claim.

## C.   CONCLUSION

For the reasons stated above, the Court determines that the bankruptcy court did not commit reversible error.  The Court therefore affirms the bankruptcy court and dismisses the Secretary's appeal.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that the Order on Motion to Alter or Amend Order for Clarification and Interpretation of Chapter 11 Plan is **AFFIRMED**, and the appeal is **DISMISSED** .

DATED this 10th day of August, 2007.



BENJAMIN H. SETTLE
United States District Judge